**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| *JEANNE KATHRYN BALL,* | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| *v.* | )     *No. 2:14-cv-61-JDL* |
| | ) |
| *CAROLYN W. COLVIN,* | ) |
| *Acting Commissioner of Social Security,* | ) |
| | ) |
| *Defendant* | ) |

**REPORT AND RECOMMENDED DECISION**[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal

raises the question of whether the administrative law judge supportably found the plaintiff capable

of performing work existing in significant numbers in the national economy.  The plaintiff seeks

remand on the bases that the administrative law judge impermissibly "cherry-picked" the record,

undermining several key determinations, and failed to adequately consider, or provide valid

reasons for discrediting, the opinion of a treating psychiatrist, William M. Sullivan, M.D.  *See*

Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The commissioner has admitted that the plaintiff has exhausted her administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement.  Oral argument was held before me on December 12, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Errors") (ECF No. 13) at 1-20. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.[2]

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2001, Finding 1, Record at 13; that she had severe impairments of affective disorder/mood disorder, anxiety-related disorder/anxiety disorder not otherwise specified, and personality disorder not otherwise specified, Finding 3, *id.*; that she did not have an impairment or combination of impairments that met or medically equaled the severity of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Finding 4, *id.* at 14; that she had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: she

---

[2] The plaintiff filed a 21-page statement of errors, to which she appended three exhibits totaling 19 pages. *See* Statement of Errors & Exhs. 1 (ECF No. 13-1), 2 (ECF No. 13-2), & 3 (ECF No. 13-3) thereto. The commissioner moved to strike the final page of the brief and all three exhibits on the basis that the plaintiff had substantially exceeded the 20-page limit on statements of errors set forth in Local Rule 16.3(a)(2)(A). *See* Defendant's Motion To Strike One Page of Plaintiff's Statement of Errors, and To Strike Exhibits 1, 2, and 3 ("Motion To Strike") (ECF No. 15). She took the position that the exhibits contained both facts and argument that belong in a statement of errors. *See id.* at 2-3. The plaintiff countered that the exhibits, which lay out chapter and verse how the administrative law judge misrepresented the record, are reasonable and appropriate aids to the court, not forbidden or limited by the local rules or any other rule. *See* Plaintiff's Opposition to Defendant's Motion To Strike (ECF No. 19) at 6. At oral argument, counsel for the commissioner withdrew her request to strike the extra page of the brief, mooting the Motion To Strike in part. I now grant the Motion To Strike in part, to the extent that the exhibits contain arguments, which I agree should have been confined to the statement of errors, and otherwise deny it. I am persuaded that, on the facts of this case, the exhibits (stripped of impermissible argumentation) qualify as illustrative aids to the court that do not fall within the page limits set by Local Rule 16.3(a)(2)(A) because they only set out the actual record language or citation in support of the plaintiff's core argument that the administrative law judge mischaracterized the record evidence in such a wholesale fashion as to warrant reversal and remand. In order to excise improper argument from the exhibits, stricken from Exhibit 1 is the narrative on page 1, beginning with "The ALJ at R14" and ending with "cited to discount the Claimant dysfunction." Exh. 1 at 1. Stricken from Exhibit 2 are (i) the narrative on page 1 beginning with, "The ALJ's cited evidence" and ending with "evaluate the ALJ's characterization[,]" (ii) the words "analysis in" in the first right-hand box on page 1, (iii) the entire bracketed comment in the second right-hand box on page 1, (iv) the entire bracketed comment (third paragraph) in the third right-hand box on page 1, (v) all words except "see Exhibit 3" in the penultimate right-hand box on page 4, (vi) the entire bracketed comment in the right-hand box beginning on page 4 and ending on page 5, (vii), the entirety of the two additional bracketed comments in the right-hand boxes on page 5, and (viii) the entirety of the bracketed comment in the right-hand box on page 7. Exh. 2 at 1, 4-5, 7. Stricken from Exhibit 3 is the first sentence of the narrative on page 1, beginning with "The ALJ's statement" and ending with "reasonable foundation." Exh. 3 at 1.

could understand, remember, and carry out simple instructions or execute simple tasks on a consistent schedule to complete a workday and workweek, could interact with co-workers and supervisors but not the general public, and could adapt to only occasional changes in the workplace, Finding 5, *id*. at 15; that, considering her age (47 years old, defined as a younger individual, on her alleged disability onset date, December 1, 2000), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 20; and that she, therefore, had not been disabled from December 1, 2000, through the date of the decision, October 25, 2012, Finding 11, *id*. at 21. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial

evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Steps 3 and 4 of the sequential evaluation process. At Step 3, a claimant bears the burden of proving that her impairment or combination of impairments meets or equals a listing. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).

At Step 4, the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen*, 482 U.S. at 146 n.5. At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## I. Discussion

The plaintiff contends that, in addition to rejecting invalidly the opinion of Dr. Sullivan, the administrative law judge cherry-picked the record – that is, ignored and selectively extracted evidence – to such an extent that it undermined his conclusions that her mental impairments did not meet or equal the criteria of any of the Listings, her allegations were not fully credible, and she retained the RFC to perform work existing in significant numbers in the national economy. *See* Statement of Errors at 1-20. I have grouped these arguments under two headings, one pertaining

to the administrative law judge's Step 3, or Listings, determination, and the other to his Step 4 mental RFC determination.

## A.  Listings Determination

The administrative law judge found that the plaintiff's mental impairments did not meet or equal the criteria of Listings 12.04, 12.06, or 12.08, stating that, in making that finding, he had considered whether the so-called "Paragraph B" criteria were satisfied.  *See* Record at 14.[3]  To satisfy those criteria, a claimant must show that her mental impairments result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  *Id.*; *see also* Listings 12.04(B), 12.06(B), 12.08(B).  Episodes of decompensation are "repeated" and of "extended duration" if there have been three episodes within one year, or an average of once every four months, each lasting for at least two weeks.  *See* Record at 14; Listing 12.00(C)(4).  The administrative law judge explained:

> In activities of daily living, the [plaintiff] has mild restriction.  In her Function Report, [she] noted that she is able to prepare simple meals for herself, shops in stores, and occasionally drive (Exhibit 7E).  During the period in question, [she] has worked, travelled, taken classes, emailed, volunteered, and participated regularly in her church community (Exhibit 13F, 11F, 9F, 8F).  She testified that she lives alone.
>
> In social functioning, the [plaintiff] has moderate difficulties.  In her Function Report, [she] noted spending time with others (Exhibit 7E).  The record shows that [she] spends time with her daughter as well as with some friends.  During the period in question, [she] was active in her church community and taught Sunday school.  She has been described as engageable, attentive, cooperative and forthcoming

---

[3] Listing 12.04 pertains to affective disorders, Listing 12.06 to anxiety-related disorders, and Listing 12.08 to personality disorders.  *See* Listings 12.04, 12.06, 12.08.  A claimant meeting the "B" criteria of any of these listings must also meet the "A" criteria to be deemed disabled.  *See id.*  The plaintiff contended that the administrative law judge found that she met the "A" but not the "B" criteria.  *See* Statement of Errors at 4-5.  However, as counsel for the commissioner pointed out at oral argument, the administrative law judge made no finding regarding the "A" criteria.  *See* Record at 14-15.

(Exhibit 4F). However, she has struggled with boundary issues in the work setting (Exhibit 7E).

> With regard to concentration, persistence or pace, the [plaintiff] has moderate difficulties. [She] has alleged problems with concentration. However, mental status examinations typically reveal intact memory and linear thought process (Exhibit 11F/2).

> As for episodes of decompensation, the [plaintiff] has experienced one to two episodes of decompensation, each of extended duration. [She] was hospitalized for suicidal ideation in 2000 and for severe depression in 2010. However, this level of depression i[s] episodic and not reflective of [her] day to day functioning, as evidenced by treatment notes throughout the record.

Record at 14.

The plaintiff challenges the administrative law judge's reasoning with respect to three of the four categories (all but that pertaining to episodes of decompensation) as either unsupported by the citations given or based on misleading, selective citation to the record. *See* Statement of Errors at 4-8. She asserts, "A fair reading of the ALJ's [administrative law judge's] findings makes clear that he has perverted the actual meaning of so many of the [plaintiff's] statements that a reasonable person cannot consider his step three findings supportable." *Id*. at 5.

She contends that the administrative law judge relied solely on the above-quoted paragraphs in reaching his Step 3 determination, given that he neither adopted nor referred to the psychiatric review technique forms ("PRTFs") of two agency nonexamining consultants, Brian Stahl, Ph.D., and Lewis F. Lester, Ph.D. *See id*. at 5 & n.3. She reasons that, because the only other PRTF of record is that of Dr. Sullivan, who found marked limitations in the three categories at issue, remand with instructions to award benefits is warranted if the court agrees that the Step 3 determination is unsupported by the citations given. *See id*. at 8. She argues that, in any event, the administrative law judge improperly rejected the Sullivan opinion. *See id*. at 12-18.

### 1. Reliance on Dr. Lester's PRTF

The plaintiff's argument is premised on the faulty foundation that the administrative law judge's Step 3 finding was unsupported by any expert opinion. As the commissioner observes, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 16) at 10, the administrative law judge expressly relied on Dr. Lester's PRTF, *see* Record at 19 (according "great weight" to Dr. Lester's opinion that the plaintiff would have mild restriction of activities of daily living, moderate restriction in maintaining social functioning, moderate difficulties with concentration, persistence, or pace, and no episodes of decompensation "as it is based on a review of the record and is consistent with the objective findings[,]" but stating that "the medical evidence of record reveals two episodes of decompensation during the period under adjudication"); *see also id*. at 92-94 (Lester PRTF).

As the plaintiff acknowledges, *see* Statement of Errors at 3, this court has held that an administrative law judge may not only pick and choose among different experts' opinions but also adopt only a portion of an expert's opinion, *see, e.g., Hicks v. Astrue,* Civil No. 09-393-P-S, 2010 WL 2605671, at *4 (D. Me. June 23, 2010) (rec. dec., *aff'd* July 15, 2010) ("[T]he plaintiff characterizes the administrative law judge's choice of medical evidence on which to rely as 'cherry pick[ing],' but that is precisely the role of the administrative law judge. He need not adopt all of any particular provider's report, if he states his reasons for adopting only a portion of it."); *Howard v. Astrue*, No. 06-96-B-W, 2007 WL 951389, at *5 (D. Me. Mar. 27, 2007) (rec. dec., *aff'd* Apr. 16, 2007) ("In this circuit, picking and choosing among experts' opinions does not in itself constitute error."). While the plaintiff is critical of that holding, commenting that "it seems dubious that an ALJ can 'cherry pick' phrases from a single report which support his denial, while ignoring

the sentences which indicate disability[,]" she does not squarely challenge it. Statement of Errors at 3-4 & n.2.

To the extent that the plaintiff means to challenge the administrative law judge's handling of the Lester PRTF on the basis that it fails to comport with *Hicks/Howard*, I find otherwise. The administrative law judge explained that, while the Lester PRTF generally was consistent with the record evidence, the portion pertaining to episodes of decompensation was not. *See* Record at 19.

The plaintiff challenges any reliance on Dr. Lester's opinions on one additional basis: that he did not have the benefit of review of purportedly material later-submitted evidence, particularly Dr. Sullivan's PRTF and progress notes of a prior treating source, Bruce Blackman, D.O. *See* Statement of Errors at 18-20.[4] In one of the cited notes, dated March 30, 2009, Dr. Blackman stated:

> [The plaintiff] is conflicted about applying for Disability Benefits. I recommended that she go to the DHHS office and get more information. The reality is that she has not been able to participate in sustained gainful employment for the past 10 years. As I understand it, whenever she has tried to return to work, she has felt overwhelmed with anxiety and dysphoria and has had to give up her job.

Record at 669.

"[T]he amount of weight that can properly be given the conclusions of non-testifying, nonexamining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert." *Rose v. Shalala,* 34 F.3d 13, 18 (1st Cir. 1994) (citations and internal quotation marks omitted). "In some cases, written reports submitted by nontestifying, nonexamining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted). This court has noted that "there

---

[4] The plaintiff made this argument only with respect to a separate opinion by Dr. Lester, his mental RFC assessment. *See* Statement of Errors at 18-20. However, because both the Lester PRTF and mental RFC assessment were completed on the same date, July 11, 2011, *see* Record at 92-96, the point applies with equal force to both.

is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC," although "[f]actors to be considered include the completeness of the consultant's review of the full record and whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the administrative law judge." *Brackett v. Astrue,* No. 2:10-cv-24-DBH, 2010 WL 5467254, at *5 (D. Me. Dec. 29, 2010) (rec. dec., *aff'd* Jan. 19, 2011) (citations omitted).

The plaintiff argues that the administrative law judge erred in relying on the Lester mental RFC assessment without assessing the impact of the later-submitted evidence, a proposition for which she cites *Gagnon v. Colvin*, No. 2:13-cv-00213-NT, 2014 WL 3530629 (D. Me. July 15, 2014). *See* Statement of Errors at 19; *Gagnon*, 2014 WL 3530629, at *5 ("An administrative law judge may rely on the opinions of state-agency reviewers when he or she finds that no new clinical evidence has been provided that would contradict the findings of those reviewers, as the administrative law judge did here.") (citations and internal quotation marks omitted). She adds that "there is every reason to believe" that Dr. Lester would have revised his assessment had he seen the new evidence. *See* Statement of Errors at 20. She argues that, while Dr. Lester disagreed with the opinions of a treating nurse practitioner, Jean Dowling, PMHNP, that the plaintiff was not "psychiatrically stable to maintain employment at this time [March 4, 2011,]" and the opinion of a treating counselor, Martin Burgess, LCPC, that the plaintiff's "[m]emory for tasks was inconsistent[,]" her "[i]nterpersonal contacts often deteriorate[,]" and she was "[e]asily taken advantage of[,]" Dowling and Burgess were not "acceptable medical sources," and it is highly

unlikely that he would have disposed of the Sullivan and Blackman opinions in the same manner. Statement of Errors at 20; *see also* Record at 495, 642.[5]

The commissioner acknowledges that the administrative law judge did not explicitly state that the new evidentiary submissions would not contradict Dr. Lester's opinion, but contends that the plaintiff has failed to demonstrate that they would have made a difference. *See* Opposition at 11. I agree. As the commissioner points out, *see id.*, the administrative law judge summarized evidence unseen by Dr. Lester, deeming it consistent overall with moderate functional limitations, *see* Record at 17, 19. As the commissioner further argues, *see* Opposition at 11, the fact that Dr. Lester did not see the Sullivan opinion is immaterial because, as discussed below, the administrative law judge supportably gave it little weight, *see, e.g.*, *Vining v. Astrue*, 720 F. Supp.2d 126, 133 (D. Me. 2010) (because administrative law judge supportably discredited treating source's mental RFC assessment, the fact that agency nonexamining consultant did not see it had "no bearing on the question of whether [the consultant's] own report [could] serve as substantial evidence of the plaintiff's mental RFC").[6]

The commissioner overlooks the plaintiff's argument that Dr. Lester likely would not have disposed of the Sullivan and Blackman opinions in the same way as he did the Dowling and Burgess opinions, *see* Opposition at 11, but it is, in any event, unavailing. Dr. Lester did not state that he rejected the Dowling and Burgess opinions because they were authored by non-acceptable

---

[5] The commissioner requires evidence from an "acceptable medical source" to establish the existence of a medically determinable impairment. *See* 20 C.F.R. §§ 404.1513(a) and 416.913(a). Nurse practitioners and counselors are not among acceptable medical sources. *See id.* However, evidence from other sources such as Dowling and Burgess may be used "to show the severity of [a claimant's] impairment(s) and how it affects [his or her] ability to work." 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

[6] The plaintiff contends that, because the administrative law judge gave little weight to the Sullivan opinion rather than rejecting it, he erred in failing to have considered its impact on the Lester opinion. *See* Statement of Errors at 19. However, as the commissioner argues, *see* Opposition at 11 n.8, that is a distinction without a difference. The administrative law judge, in effect, rejected Dr. Sullivan's findings with respect to the three areas at issue, activities of daily living, social functioning, and concentration, persistence, or pace. *See* Record at 19.

medical sources, but because the opinions relied heavily on the plaintiff's subjective report of symptoms and limitations and contrasted sharply with the totality of the other evidence of record. *See* Record at 96.  It does not follow that the fact that Drs. Sullivan and Blackman were acceptable medical sources would have made a difference.  For all of these reasons, the plaintiff falls short of making a persuasive showing that the later-filed evidence undermines reliance on the Lester opinion.

## 2. Reliance on Discussion of Underlying Evidence

Beyond this, I am unpersuaded that the administrative law judge broadly mischaracterized the record in setting forth the evidence on which he relied, in addition to the Lester PRTF, in reaching the determination that the plaintiff's impairments did not meet or equal a listing.

With respect to activities of daily living, the plaintiff did indeed report that she was able to prepare simple meals for herself, shop in stores, and drive, although she indicated that she drove "very seldom," rather than "occasionally," as the administrative law judge phrased it.  *Compare id*. at 14 *with id*. at 299-300.  Treatment records do reflect that at various points during the relevant period, the plaintiff worked, travelled, took a class, used email, volunteered, and participated regularly in her church community.  *Compare id*. at 14 *with id*. at 246, 402, 406, 650, 668, 671. The plaintiff complains that the administrative law judge omitted the material development that she had an anxiety attack at church, was taken by ambulance to the hospital, and thereafter stopped teaching Sunday school.  *See* Statement of Errors at 6; Exh. 1 at 2.  Yet, the administrative law judge did take this into account in the context of describing the circumstances that led to her 2010 episode of decompensation.  *See* Record at 14, 17.

With respect to social functioning, I agree that the administrative law judge's citation to the Function Report for the proposition that the plaintiff reported spending time with others leaves

11

a misimpression: in fact, she reported that she spent "minimal time" with others and isolated herself. *Compare id*. at 14 *with id*. at 301. Yet, as the administrative law judge also noted, other portions of the record indicated that, during the relevant period, the plaintiff spent time with her daughter as well as some friends, was active in her church community, and taught Sunday school. *Compare id*. at 14 *with id*. at 406-07, 511, 516, 519, 521, 523, 528, 537, 671.

The plaintiff asserts that the administrative law judge's citation to notes indicating that she was engageable, attentive, cooperative, and forthcoming was misleading in that he omitted mention of contrary evidence, including treatment notes describing her mood as, *inter alia*, rapidly shifting, sad, anxious, worried, angry, irritable, and tearful. *See* Statement of Errors at 7; Exh. 1 at 2-5. However, the administrative law judge elsewhere summarized the plaintiff's lengthy mental health treatment history, including notations of her mood difficulties, and observed that her symptoms had significantly improved with medication. *See* Record at 16-18.

Finally, with regard to concentration, persistence, or pace, the administrative law judge correctly noted that, although the plaintiff had alleged problems with concentration, mental status examinations typically revealed intact memory and linear thought process. *Compare id*. at 14 *with id*. at 648; *see also, e.g., id*. at 651, 654, 657, 660. The plaintiff argues that there is no medical or legal authority for the proposition that, if on mental status examination a claimant's memory appears intact and her thought process linear, she has only moderate difficulties in maintaining concentration, persistence, or pace. *See* Statement of Errors at 7. She adds that the administrative law judge again cherry-picked by omitting mention of contrary evidence, including notes stating that she tended to be tangential and circumstantial in her thought processes and endorsed difficulty concentrating and completing tasks. *See id.* at 8; Exh. 1 at 6-7.

Yet, as the commissioner observes, *see* Opposition at 15, there is authority for the proposition that normal mental status examinations reasonably may be viewed as inconsistent with marked limitations, *see, e.g.*, *Melland v. Social Sec. Admin. Comm'r,* No. 1:11-cv-00223-NT, 2012 WL 1800722, at *6 (D. Me. Apr. 26, 2012) (rec. dec., *aff'd* May 16, 2012); *Guindon v. Astrue*, C.A. No. 11-090A, 2012 WL 267508, at *9 (D.R.I. Jan. 30, 2012). To the extent that the plaintiff identifies progress notes reflecting deficits bearing on concentration, persistence, or pace, she does not show that, in combination with the normal mental status results on which the administrative law judge relied, they suggest marked, rather than moderate, limitation. Moreover, as the commissioner notes, *see* Opposition at 15-16, the administrative law judge's finding that the plaintiff had only moderate restrictions in this area was consistent with that of Dr. Lester.

### 3. Handling of Dr. Sullivan's PRTF

Dr. Sullivan submitted a PRTF dated September 20, 2012, in which he found that the plaintiff met Listings 12.04, 12.06, and 12.08. *See* Record at 678. With respect to the "B" criteria, he determined that she had marked restriction of activities of daily living, marked difficulties maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace, and had experienced one or two episodes of decompensation, each of extended duration. *See id.* at 682.

Dr. Sullivan also submitted a consultation report dated August 30, 2012, in which he noted that the plaintiff had been followed psychiatrically over the prior few years by nurse practitioner Dowling, whom he had supervised since January 2011, that he had been aware of the diagnostic and treatment issues pondered by Dowling, and that he had been asked to meet with the plaintiff to further develop a sense of diagnostic perspective and comment on her current treatment and functional abilities. *See id.* at 672. He noted that he had reviewed certain mental health records

dating back to 2000 and had interviewed the plaintiff on December 7, 2011, and July 17, 2012.

*See id*. He also performed a mental status examination but did not formally test the plaintiff's memory. *See id*. at 675-76. He assessed her with a Global Assessment of Functioning ("GAF") score of 24 and concluded, "There is no question in my mind but that [the plaintiff] is disabled by her mental illness and unable to engage in employment, and that she has been clearly unable to do so now over a dozen years or more." *Id*. at 676-77.[7]

The administrative law judge gave "little weight" to the Sullivan opinion, explaining:

Although Dr. Sullivan supervises nurse practitioner Dowling, and is thus privy to the [plaintiff's] progress, his opinion is inconsistent with the record as a whole which indicate[s] that the [plaintiff] has only moderate limitations and that she has shown improvement with medication and treatment (Exhibit 11F/17). Furthermore, the doctor estimated the [plaintiff's] GAF score at 24. According to the Diagnostic and Statistical Manual of Mental Disorders (DSM), [a] GAF of 24 is indicative of behavior that is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas, such as staying in bed all day with no job, home or friends. However, the doctor recommended no immediate intervention and reported that she was neither delusional nor suffering from hallucinations upon examination (Exhibit 14F/5).

*Id*. at 19.

The plaintiff argues that this discussion offended the "treating source rule" in that the administrative law judge failed to give controlling weight to the Sullivan opinion or, in the alternative, to supply good reasons for according it little weight. *See* Statement of Errors at 12-18.

---

[7] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id*. The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id*. at 34. A GAF score of 21 to 30 represents "[b]ehavior [that] is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)." *Id*. (boldface omitted).

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

When a treating source's opinion is not given controlling weight, it is weighed in accordance with enumerated factors. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[8] An administrative law judge may give the opinion little weight or reject it, provided that he or she supplies "good reasons" for so doing. *See, e.g., id.* ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96–8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2014) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted"). Slavish discussion of the relevant factors is not required. *See, e.g., Golfieri v. Barnhart,* No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

The plaintiff argues that the only evidence that was inconsistent with the Sullivan opinion was the Lester opinion and that, for purposes of the treating source rule, inconsistency between expert reports should not matter. *See* Statement of Errors at 14 ("[I]t seems appropriate to limit such 'inconsistency' to matters of diagnosis, test results, and other matters which can be objectively ascertained."). However, she cites no authority for that proposition. *See id.* In any event, the administrative law judge did not rely solely on an inconsistency between expert opinions

---

[8] These are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.,* whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

but, rather, inconsistencies between the Sullivan opinion and the record as a whole. *See* Record at 19. He specifically cited Dowling's notes, *see id.*, which showed continuing improvement in the plaintiff's symptoms with treatment, *see, e.g., id.* at 647, 650, 654, 656, 659, 662. He reasonably viewed these notes as inconsistent with the Sullivan opinion. He did not err in declining to give controlling weight to the Sullivan opinion.

The plaintiff argues, in the alternative, that the administrative law judge failed to articulate any good reason for giving the Sullivan opinion little weight, wrongly characterizing Dr. Sullivan as an "examining" rather than "treating" source, failing to explain how his opinion was inconsistent with the record as a whole, and discrediting the opinion based on a misunderstanding of the GAF scale. *See* Statement of Errors at 14-17.

As the commissioner suggests, *see* Opposition at 6 n.4, the administrative law judge did not conclude that Dr. Sullivan was not a treating source. Rather, he indicated that he accorded the opinion little weight *despite* Dr. Sullivan's familiarity with Dowling's treatment of the plaintiff. *See* Record at 19.[9] While the administrative law judge did not explain inconsistencies between the Sullivan opinion and the record, as the commissioner suggests, *see* Opposition at 4-7, he plainly adverted to his prior lengthy summary of the record evidence. Among observations made in that summary were that treating sources had assessed the plaintiff with GAF scores of 60 in May 2002, suggestive of moderate symptoms, 64 in December 2003, suggestive of mild symptoms, 66 in May

---

[9] At oral argument, counsel for the commissioner contended, in the alternative, that Dr. Sullivan did not qualify as a treating physician. This argument, which could have been, but was not, raised in the commissioner's opposition, is waived. *See Connor v. Colvin*, No. 1:13-cv-00219-JAW, 2014 WL 3533466, at *5 n.4 (D. Me. July 16, 2014) ("The general rule in this district long has been that any claim or issue not raised in a claimant's statement of errors is deemed waived. I perceive no reason against, and indeed fairness would counsel for, the same rule applying with respect to responsive briefs, which the commissioner has been required to file since the amendment of Local Rule 16.3(a)(2) effective January 1, 2013.") (citation omitted).

2007, again suggestive of mild symptoms, and 55 in July 2010, when the plaintiff began treatment with Dowling. *See* Record at 16-17. While, as the administrative law judge noted, the plaintiff was assessed of a GAF score of between 30 and 35 in August 2010, when she voluntarily admitted herself for inpatient mental health treatment for exacerbation of depressive symptoms and suicidal ideation in the context of extreme financial stressors, treatment notes indicated that she was feeling much better as of September 2010 and was able to go the bank, cook, see friends, and make decisions, and that her symptoms continued to improve in 2011. *See id.* at 17. The administrative law judge reasonably viewed the Sullivan opinion as inconsistent with this evidence.

With respect to Dr. Sullivan's assessment of a GAF score of 24, the plaintiff argues that the administrative law judge exceeded his competence as a layperson, misunderstanding the GAF scale, by focusing only on the first, or "symptom severity" part, and ignoring the second part, which covers functioning. *See* Statement of Errors at 16. She asserts that Dr. Sullivan's GAF score was clearly based on her functioning and that the record, including the Function Report on which the administrative law judge so heavily relied, amply documents her inability to function in almost all areas, including often staying in bed all day and having no job. *See id.*

However, as the commissioner observes, *see* Opposition at 9, the administrative law judge appears to have considered both possible meanings of the GAF score, noting, with respect to the functional aspect, that Dr. Sullivan had not recommended any immediate intervention, *see* Record at 19. In any event, as the commissioner contends, *see* Opposition at 9, to the extent that Dr. Sullivan meant to indicate that the plaintiff was staying in bed all day and had no friends, the administrative law judge reasonably found that treatment notes, particularly those by Dowling, indicated that she possessed greater functional capacities, *see, e.g.,* Record at 511 (noting on September 23, 2010, that the plaintiff was "able to go to the bank, cook, see friends, make

decisions, essentially manage her life in a far more active role than she did when she was in the hospital"), 516 (noting on October 7, 2010, that the plaintiff reported that she was "getting out more with friends"), 650 (noting on July 11, 2011, that the plaintiff had "gotten her computer going and that she [was] emailing her daughter and friends").

For all of these reasons, I find no reversible error in the administrative law judge's decision to accord little weight to the Sullivan PRTF.

## B. Mental RFC Determination

The plaintiff next contends that the administrative law judge reached a flawed determination of her mental RFC based on an improper credibility determination, marred by cherry-picking the record, as well as misplaced reliance on the mental RFC assessment of Dr. Lester. *See* Statement of Errors at 8-12, 18-20. For the reasons discussed above, the plaintiff falls short of demonstrating that the administrative law judge's reliance on the Lester opinion was misplaced. That opinion stands as substantial evidence of the plaintiff's mental RFC. For the reasons that follow, she also fails to demonstrate that the administrative law judge's credibility determination was sufficiently flawed by cherry-picking to warrant reversal and remand.

The administrative law judge discredited the plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms to the extent inconsistent with his RFC determination, *see* Record at 18, explaining:

> Although the [plaintiff] has alleged that her impairments prevent her from sustaining work in any capacity, the record . . . evidence establishes that she has substantially greater functional capabilities. In her Function Report, [she] noted that she is able to prepare simple meals for herself, shops in stores, and occasionally drive[s] (Exhibit 7E). As noted above, [she] testified that she "lied" about her functional capabilities in her application because she was ashamed about her limitations. Although it is likely that she intended to explain that she underrepresented her limitations, the fact that she admitted to purposely misrepresenting facts suggests that the information [she] provided . . . generally may not be entirely reliable. [She] has alleged performing few chores. Yet it is

noted that [she] lives alone and has not reported any particular help in maintaining the residence. She noted that she got certified to teach dance class but that she has been unable to teach (Exhibit 7E). During the period in question, [she] has worked, travelled, taken classes, volunteered, and participated regularly in her church community (Exhibit 13F, 9F, 8F).

Although she alleged chronic depression and anxiety since 2000, treatment notes show only intermittent psychiatric treatment. Most recent treatment notes indicate that [she] was tolerating medication well with a decrease in symptoms. Although treating practitioners consistently note anxious and sad mood, mental status examinations have been within normal limits otherwise (Exhibit 11F/17). Although the [plaintiff] testified that her house is a mess and she cannot handle personal care, Ms. Dowling noted that [she] was well-groomed and clean upon her most recent examination (Exhibit 11F/17).

Additionally, the record reflects that the [plaintiff] worked after the alleged onset date. Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the [plaintiff's] daily activities have, at least at times, been somewhat greater than [she] has generally reported. Because of the inconsistency between [her] activities and her allegations regarding the functional limitations of her impairment as well as lack of regular treatment, the undersigned does not find [her] testimony regarding the degree of limitation imposed by her impairments to be fully credible and consequently gives [her] testimony limited weight.

*Id*. at 18-19. After discussing the weight given to various expert opinions, he summarized:

[T]he above [RFC] assessment is supported by the clinical signs and examinations of record which show significant pain reduction in symptoms with medication, the [plaintiff's] minimal treatment history except during periods of exacerbation, the [plaintiff's] activities of daily living, and the fact that she is able to live independently.

*Id*. at 19.

"The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Secretary of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987). Mindful that this is a deferential standard, the plaintiff challenges the supportability of every one of the above findings. *See* Statement of Errors at 8-12 & Exh. 2; *see also, e.g., Voisine v. Colvin*, No. 2:13-cv-00412-JAW, 2014 WL

5323415, at *5 (D. Me. Oct. 17, 2014) ("[E]ven assuming *arguendo* that some of the bases provided by the administrative law judge for his credibility determination are unsupported by the record, he articulates a number of bases that are. This suffices to survive the applicable deferential standard of review.").

Notwithstanding the plaintiff's comprehensive challenge, the administrative law judge's credibility determination passes muster pursuant to this standard of review.

As discussed above, the plaintiff's Function Report supports the findings that she can prepare simple meals for herself, shop in stores, and drive, albeit only very seldom rather than occasionally, as the administrative law judge found. The administrative law judge properly drew a negative credibility inference from the fact that the plaintiff lied about her functional capabilities, even for the purpose of exaggerating, rather than minimizing, them. Dowling's notes did reflect that the plaintiff was clean and well-groomed. *See, e.g.,* Record at 648, 651, 654, 657, 660, 663. While, as the plaintiff argues, the facts that she lived alone and had no particular help were not inconsistent with her allegation that her house was a mess, *see* Statement of Errors at 10, details in Dowling's notes relating to home care, as well as self-care, supported the administrative law judge's finding that her functioning in those areas was greater than alleged, *see, e.g.,* Record at 511, 528, 542. As discussed above, the administrative law judge fairly characterized the record as revealing that, at times during the relevant period, the plaintiff worked, travelled, took a class, used email, volunteered, and participated regularly in her church community.

The commissioner acknowledges that the reference to "pain reduction" was a scrivener's error and that characterizing the plaintiff's treatment as "minimal" might have been an overstatement. *See* Opposition at 18. Indeed, the use of the word "minimal" is simply wrong. The plaintiff catalogues 119 occasions on which she sought mental health treatment from her

alleged onset date of disability, December 1, 2000, through the date of her hearing, October 4, 2012. *See* Statement of Errors at 11 & Exh. 3. On the other hand, as the commissioner suggests, this does not necessarily mean that the plaintiff was accessing all of the care she required: on some occasions treating providers emphasized the importance of her return to regular therapy. *See* Opposition at 18 (citing Record at 402, 404, 418, 595). As discussed above, the administrative law judge supportably characterized more recent treatment notes as indicating that the plaintiff was tolerating medication well, with a reduction in symptoms.

The plaintiff identifies three occasions on which she was noted to have abnormal mental status examination findings apart from an anxious and sad mood. *See* Exh. 2 at 5 (citing notes indicating that she was rumpled or disheveled and overwhelmed, afraid, ashamed, hopeless, and/or guilty). However, even taking this into account, the majority of the abnormal findings were of an anxious or sad mood.

In sum, while the administrative law judge's credibility discussion contains errors, they are not of sufficient magnitude, in number or substance, to warrant disturbing his assessment.

## II. Conclusion

For the foregoing reasons, I **DEEM** the commissioner's motion to strike **MOOT** in part with respect to page 21 of the statement of errors, **GRANT** it in part with respect to argument contained in the exhibits and otherwise **DENY** it, and recommend that the decision of the commissioner be **AFFIRMED**.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum*

*and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 31st day of January, 2015.

<u>/s/  John H. Rich III</u>
John H. Rich III
United States Magistrate Judge